CHARLES S. HARVEY, Administrator, Appellant, v. BERT CLARK, Appellee (and one other case).

No. 45970.

NOVEMBER 17, 1942.

Roy A. Cook and Cherny & Cherny, of Independence, for appellants.

O'Brien & Molloy, of Independence, for appellee.

GARFIELD, J.— On December 21, 1940, at 1:15 a. m. decedent, a boy of fifteen, was riding as a guest in defendant's automobile from Independence to Waterloo. At a railroad crossing in the town of Jesup the automobile collided with the second car behind the engine of a moving passenger train. Decedent and one Wilson, also riding in the car, were killed. Defendant was injured. These actions were brought under section 5037.10, Code, 1939, claiming the collision was caused by the reckless operation of the automobile. In directing a verdict for defendant at the close of plaintiff's testimony, the court ruled that the evidence was insufficient to prove recklessness. This ruling presents the only question for us to consider.

The automobile approached the railroad crossing from the south on paved U. S. Highway 20. The train was traveling west. The engineer of the train testified that after the engine passed over the highway he looked to the south and saw an automobile coming. "The headlights were bobbing up and down." There was a dip in the paving about 240 feet south of the railroad track. "In a few seconds" the fireman told the engineer the auto had hit the train. The fireman testified that he noticed the auto as the engine got to the crossing. "His headlights were bobbing, bouncing up and down a bit." He looked back to see if the driver was going to stop and saw the collision.

The trainmen brought the train to a stop, backed it up, and then examined the wreckage. The automobile was badly damaged. Appellee was found lying about 30 feet west of the pavement. The body of Wilson was found about 60 feet west of the paving "fairly close" to the railroad track. Decedent's body was 50 to 60 feet southwest of the crossing, a little closer to the paving than Wilson's body. Wilson apparently sustained greater injuries than decedent, although both were killed. "There wasn't much left of his [Wilson's] head attached to his body."

The automobile, according to one witness, was found between decedent's body and Wilson's. Another witness said the car was "a little bit" northwest of appellee. In any event, all the testimony shows that the auto and its three occupants were found within 30 to 60 feet west and southwest of the crossing. The auto struck the west truck of the second mail car.

"There were marks along the side of the car the full length of the car in places." There was blood all over the truck and shattered glass on it. What looked like brains were found on the east truck on the south side of the railroad car.

The town marshal testified that the train, as always, whistled all the way through Jesup. There was a wigwag signal in the shape of an inverted L to the south of the track and on the east side of the highway. From a picture in evidence we judge the upright post of the signal is approximately 15 feet high with a bell on top of the post. Extending horizontally to the west from the upper part of the post, underneath the bell, is an arm perhaps 6 feet long. Suspended from the west end of this arm is a disc perhaps 18 inches in diameter with a red light in the center. The marshal testified the signal was working, "but it was so foggy that night that you really couldn't see it very far." The doctor who was called to the accident also testified it was very foggy. Other testimony was that, while it was foggy in spots, there was fair visibility at the crossing when the collision occurred.

There is testimony that after the collision appellee said, "We didn't know we were going to hit the train until we hit it." In this same conversation, appellee said that, while he knew there was a train through Jesup, he was not driving. Decedent's mother by adoption testified that she accused appellee of driving too fast but that appellee denied the charge and asserted he was not exceeding 20 miles per hour.

There is some dispute as to whether appellee or Wilson was driving. Appellee testified as appellant's witness that Wilson was driving and that he was sitting in the front seat with Wilson. Appellee also told decedent's mother by adoption, according to the witness Trimble, that Wilson was driving. Appellant argues that appellee was driving, because the adoptive mother testified that appellee told her (as above stated) in the same talk to which Trimble testified, "I wasn't driving over 20 miles an hour [through Jesup]," and also because appellant was injured less severely than Wilson, who was killed.

Since appellee concedes that Wilson was driving with his consent, it is not of vital importance which of the two was

driving. Appellee would be legally liable for decedent's death if caused by the reckless operation of appellee's automobile by one driving with the owner's consent. Code sections 5037.09 and 5037.10. White v. Center, 218 Iowa 1027, 1037, 254 N. W. 90; Annotation 131 A. L. R. 891, 892. See, also, Allbaugh v. Ashby, 226 Iowa 574, 284 N. W. 816.

We have summarized substantially all the evidence on the question of recklessness. Appellant argues that the testimony of appellee need not be accepted as a verity, since he is interested in defeating recovery; also that recklessness may be proven by circumstantial evidence. Both propositions may be conceded. Nevertheless, the burden rested upon appellant to offer substantial evidence from which reasonable minds might conclude that the automobile was driven recklessly.

To constitute recklessness under the guest statute, conduct must be more than negligent and must manifest a heedless disregard for or indifference to the consequences or the rights or safety of others. It need not involve moral turpitude nor wanton and willful misconduct. Crowell v. Demo, 231 Iowa 228, 230, 1 N. W. 2d 93, 94, and citations. We have frequently said that conduct arising from mere inadvertence, thoughtlessness, or error of judgment is not reckless. McQuillen v. Meyers, 213 Iowa 1366, 1368, 241 N. W. 442; Welch v. Minkel, 215 Iowa 848, 852, 246 N. W. 775; Petersen v. Detwiller, 218 Iowa 418, 421, 255 N. W. 529; Vance v. Grohe, 223 Iowa 1109, 1113, 274 N. W. 902, 116 A. L. R. 332. We have also held that a finding of recklessness in a case of this character cannot be based on the doctrine of res ipsa loquitur. Phillips v. Briggs, 215 Iowa 461, 465, 245 N. W. 720.

Appellant relies upon testimony of the trainmen that the headlights were bobbing up and down and the location and condition of the wrecked car and its occupants as showing that the automobile was traveling at excessive speed. There was a dip in the pavement about 240 feet south of the crossing. This or some other condition of the surface of the paving may well have caused the headlights to "bob." While the paved roadway and surrounding ground were generally level, the evidence does not show how smooth the surface of the pavement was. There is no evidence of the speed of the train. The fair inference

probably is that it was not excessive for a passenger train. It was soon brought to a stop following the collision. Apparently the train did not stop at the Jesup station. Considering the absence of evidence as to speed of the train, we are unable to see how the location or condition of the automobile and its occupants after the collision throws much light on the speed of the automobile.

As we view it, substantially this question is presented: Is a jury finding of recklessness justified merely from proof that an automobile was driven into the side of a moving passenger train at night when the driver apparently did not see a wigwag crossing signal which was in operation? Like the court below, we answer in the negative. A finding of recklessness from the showing made here, viewed in the light most favorable to appellant, would necessarily be based largely on speculation and conjecture. Appellee's car may have been driven recklessly, but under this evidence a jury finding to that effect would not be justified. As having some bearing upon our decision, see Roberts v. Koons, 230 Iowa 92, 296 N. W. 811; Scott v. Hansen, 228 Iowa 37, 289 N. W. 710; Paulson v. Hanson, 226 Iowa 858, 285 N. W. 189; Mayer v. Sheetz, 223 Iowa 582, 273 N. W. 138; Duncan v. Lowe, 221 Iowa 1278, 268 N. W. 10; Wion v. Hayes, 220 Iowa 156, 261 N. W. 531; Brown v. Martin, 216 Iowa 1272, 248 N. W. 368.

The judgment in each case is—Affirmed.

All JUSTICES concur.